# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE SHERRY ANN MCGANN,

Debtor.

_____

SHERRY ANN MCGANN,

Appellant,

v.

JEANNE Y. JAGOW, Chapter 7 Trustee,

Appellee.

_____

BAP No. CO-24-004

Bankr. No. 20-18118
Chapter 7

THE BRIEF

Sherry McGann
PO BOX 2355, Grand Lake, CO
80447
sherry@nalaimaui.com

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................................................... 2

STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW ........................................................ 2

ISSUE ONE: Abuse of Discretion - Exclusion and Admission of Evidence ..............................................2

ISSUE TWO: Unclean hands of the Trustee - DeNovo – Mixed Question of Law and Fact ....................5

ISSUE THREE: Trustee Intentionally Misleading the New Trier of Fact is Clearly Erroneous .................8

ISSUE FOUR: Important Questions of Public Policy Concerns With A Trustee Acting In Bad Faith Wielding Unnecessary Power For Self-Serving Purposes. ................................................................................. 12

STATEMENT OF THE CASE ................................................................................................... 14

SUMMARY OF THE ARGUMENT ................................................................................................ 20

ARGUMENT ................................................................................................................................ 25

CONCLUSION ................................................................................................................................ 29

**CERTIFCATE OF COMPLIANCE PER RULE 8015 (h) The A/Debtor preparing the certificate relied on the word-processing system used to prepare the document. The number of words is 9,277 in the document.**

\*\* TABLE OF AUTHORITES AT END OF DOCUMENT

## JURISDICTIONAL STATEMENT

Appellant filed a notice of appeal on [February 20, 2024] appealing the Bankruptcy Court's [Order Denying Motion to Dismiss (the "Dismissal Order") [Bankr. ECF No. 371 App.779-798] entered on [January 31, 2024].

The basis for the Bankruptcy Court's subject-matter jurisdiction is defined by statute. Under 28 U.S.C. 1334(b), a bankruptcy court has jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11." "Arising under title 11" describes those proceedings that involve a cause of action *created* or determined by a statutory provision in the bankruptcy code. *Harris v. Wittman (In re Harris), 590 F.3d 730, 737 (9th Cir. 2009)*.

The basis for the Bankruptcy Appellate Panel's jurisdiction is authorized by 28 U.S.C. § 158 (b) to hear, with the consent of all parties, appeals from the decisions of the United States bankruptcy courts. [BAP opinions are regarded as "highly persuasive though not binding, precedent." *Daly v. Septula (In re Carrozzella & Richardson), 255 B.R. 267, 273 (Bankr. D. Conn. 2000)*; accord In re *Akram, 259 B.R. 371, 374 (Bankr. C.D. Cal. 2001)*.]

In the Dismissal Order, the Bankruptcy Court concluded Appellant/Debtor failed to meet her burden to establish cause for dismissal under § 707(a).

The BAP concluded the Dismissal Order was final as it definitively disposes of the discrete dispute over whether cause exists under 11 U.S.C. § 707(a) to dismiss the chapter 7 case to enable the Debtor to pay her creditors outside of bankruptcy instead of allowing the chapter 7 trustee to administer the bankruptcy estate for the benefit of creditors at Bankr. [ECF No. 14- App.1-3] Order allowing Appeal to Proceed.

## STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

ISSUE ONE: <u>Abuse of Discretion - Exclusion and Admission of Evidence</u>

**a.** **Standard of Review**

Under the Arbitrary and Capricious Standard, a reviewing court must consider whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.  See *Envtl. Def. Ctr., Inc. v. EPA, 344 F.3d 832, 858 n.36 (9th Cir. 2003)*.  The court may reverse only when the agency has relied on impermissible factors, failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence [Bankr. ECF No.353 App.677-705 and 379 App.813-849] or is so implausible it could not be ascribed to a difference in view or to agency expertise.  See id.; *County of Los Angeles v. Leavitt, 521 F.3d 1073, 1078 (9th Cir. 2008)*. (court must determine whether the agency articulated a rational connection between the facts found and the choice made); *Price Rd. Neighborhood Ass'n v. U.S. Dep't of Transp., 113 F.3d 1505, 1511 (9th Cir. 1997)* (court must consider whether the agency's decision is based on a reasoned evaluation of the relevant factors). [Bankr. No.41 App. 5; No.125 App.20; No. 189 APP.22-40; No.200 App.42-57; No.207 App.59-97; No,-.311 App318-383; No.395 App.860-887; No.396 App.889-896; No. 397 App.898-905; No.399 App.907-917; No.400 App.919-922]

b.      **Argument and Citation of Authority**

In the legal context, capricious is defined in *Boothe v. Roofing Supply, Inc. of  Monroe*: "arbitrary and capricious conduct is willful and unreasonable action without consideration or regard for the facts and circumstances." Arbitrary and capricious is a standard for judicial review and appeal, often seen in administrative law.

The Appellant-Debtor's issue arises in the leading-up to trial, such as discovery or the manner in which the trial proceeded - Discovery rulings (*Time Warner Entertainment Co. v. Six Flags Over Georgia, 245 Ga. App. 334, 350 (2000)*.  [Bankr. No. 321 App.387-388; No.323 App.390-396; No.342 App. 526-539; No.353 App. 677-705; No.379 App.813-849; No.389 App. 855-858; No.395 App. 860-887; No.396 App.899-896; No.397 App.898-905; No.399 App.907-917; No.400 App.919-922].   The Appellant-Debtor attempted to stop all asking the bankruptcy court with for an injunction.  [Bankr. ECF No.281 App. 133-189; No.290 App.297-304; No.291 App.306-307]; during the conduct of the trial

itself, such as matters involving admissibility of evidence or testimony of witnesses; or, in the situation involving the unclean hands of the Trustee beginning with a 'staged email' in July of 2023 and further during trial October 16th and 17th 2023.

The bankruptcy court Abused Its Discretion by denying evidence of the Debtor and being swayed by the misrepresentations of the Trustee who provided false and misleading information to the new Judge regarding the history of the past 4-years in the 20-18118 bankruptcy at the October 16th an 17th 2023 Evidentiary Hearing. [Bankr. ECF No.298 App.309-316; No.320 App.385; No.326 App.439-446; No.333 App. 448-459; No.335 App. 461-483; No.344 App.561-567; No.345 App.569-646; No.346*noting the record App.648-662; No.351 App.664-675; No.353 App. 677-705; No.355 App.707-718; No.356 App. 720-725; No.357 App.727-746; No.358 App.748-755; No.361 App.757; No.388 App.851-853; No.400 App.919-922; No.403, No.404 App.941-1071; No.405 App.1073; No.416 App.1083-1085.

Although there is no set standard for an arbitrary and capricious decision, guidance can be found in *Natural Resources Defense Council, Inc. v. United States EPA*: 5 U.S.C. § 706(2)(A) authorizes the court to "set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Under this standard, a court must find a "rational connection between the facts found and the choice made" per *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co. (1983)*. The court must decide whether the agency[trustee] considered the relevant factors and whether there has been a clear error of judgment; see *Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)*. Courts usually equate the "abuse of discretion" standard and the "arbitrary and capricious" standard, holding that, in either instance, the court need only be satisfied that "substantial evidence" supports the plan administrator's benefit denial decision [Appellee-Trustee's interference holding Appellant-Debtor involuntarily]. Scope of Review: 5 U.S.C. § 706(2)(A)

**c.      The Consequence of Failing to Follow the Rule;**

The Debtor has suffered great ramifications due to the denial of the Motion to Dismiss through forced Turnover actions being adjudicated in the BAP 23-24 , 24-06 – Stay Pending Appeal, 24-07 – Contempt, and 24-10 – Legal fees from the contempt charge, and Colorado Civil Case 24-cv-727. Although BAP 23-24 was just Dismissed as 'moot' because the Trustee and her counsel already performed the violation act of entering the premises on February 28, 2024, it does not excuse the fact in which they coerced entered to the Appellant-Debtor's premises unlawfully with forceful tactics used in an unnecessary forced turnover that served absolutely no purpose as shown by their 'report' of nothing on at [Bankr. ECF No.401 App.924-925].

The property was of inconsequential value in March of 2022 when the Debtor offered to settle. The property has suffered more damages in the years that have passed since the settlement offer due to the Trustee and her Counsels inappropriate management of the Estate and holding the Debtor unconstitutionally against her will in a supposedly voluntary bankruptcy – and all done in the plain sight of the Courts with full knowledge and irrevocable proof the Appellee-Trustee lost millions of dollars owed to McGann's Estate and further damaged and humiliated her causing great personal harm.  The Public has a right to understand how they are not being held accountable for these *facts that cannot be disputed if the evidence is considered by the Court*.

ISSUE TWO: <u>Unclean hands of the Trustee - DeNovo – Mixed Question of Law and Fact</u>

a.      **Standard of Review**

Does the Trustee's obligation under Section 3057 of title 18 of the United States Code [report suspected violations of federal criminal law] allow discretion to refer only those matters which will be prosecuted or for which there is proof beyond a reasonable doubt? [Bankr. No.339 App.497-504; No.343 App.541-559]

b.      **Argument and Citation of Authority**

28 U.S.C. § 586 requires the trustee to report suspected violations of federal criminal law to the appropriate United States Attorney. A mixed question of law and fact arises when the historical facts are

established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. See *Pullman Standard v. Swint, 456 U.S. 273, 289 n.19 (1982)*; see also *Khan v. Holder, 584 F.3d 773, 780 (9th Cir. 2009)*; *Suzy's Zoo v. Commissioner, 273 F.3d 875, 878 (9th Cir. 2001)* (stating that a mixed question "exists when primary facts are undisputed and ultimate inferences and legal consequences are in dispute").

Questions of Law reviewed De Novo include Interpretation of federal rules. See *United States v. Urena, 659 F.3d 903, 908 (9th Cir. 2011)* (evidence); *United States v. Alvarez-Moreno, 657 F.3d 896, 900 n.2 (9th Cir. 2011)* (criminal procedure); *Riordan v. State Farm Mut. Auto. Ins., 589 F.3d 999, 1004 (9th Cir. 2009)* (civil procedure).

Mixed questions of law and fact generally require the consideration of legal concepts and the exercise of judgment about the values that animate legal principles. See *Smith v. Commissioner, 300 F.3d 1023, 1028 (9th Cir. 2002)*. Mixed questions of law and fact are generally reviewed de novo. See *Mathews v. Chevron Corp., 362 F.3d 1172, 1180 (9th Cir. 2004)*; but see *Haile v. Holder, 658 F.3d 1122, 1125 (9th Cir. 2011)* ("We review … determinations of mixed questions of law and fact for substantial evidence."). Examples include: Whether reasonable suspicion exists. See *United States v. Jimenez-Medina, 173 F.3d 752, 754 (9th Cir. 1999)*.

Independent review can be applied by the BAP in resolving constitutional issues, interpretation of statues, regulations and the rules of court, and legislative validity. "[J]udicial deference is not necessarily warranted where courts have experience in the area and are fully competent to decide the issue." *Monex Int'l, Ltd. v. Commodity Futures Trading Comm'n, 83 F.3d 1130, 1133 (9th Cir. 1996)*.

As a result, questions of fact can be transformed into questions of law when the facts are uncontroverted and only one deduction or deduction can reasonably be drawn from those facts. (*Fagerquist v. Western Sun aviation, incl. (198) 191 Cal.app.3d 709, 719*). Note that "[f]actual findings underlying the district court's ruling are reviewed for clear error." *Wilkes, 662 F.3d at 532.*

Furthermore, if, the application of the law to the facts requires an inquiry that is "essentially factual," review is for clear error.  See *Darensburg v. Metro. Transp. Comm'n, 636 F.3d 511, 518-19 (9th Cir. 2011)* ("[M]ixed questions of fact and law are reviewed de novo, unless the mixed question is primary factual."  (internal quotation marks and citation omitted)); *Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002)*; see also *Exxon Co. v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir. 1995)* ("This standard of review is an exception to the general rule that mixed questions of law and fact are reviewed de novo.").

For example:  Whether proximate cause shown.  See *Harper v. City of Los Angeles, 533 F.3d 1010, 1027 n.13 (9th Cir. 2008)*; *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 783 (9th Cir. 2000)*. Whether established facts constitute negligence.  See *Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996)*.

**c.     The Consequence of Failing to Follow the Rule;**

The Trustee did not report the fraudulent redemption agreement or illegal seizure of the Hawaii Property now sold [Claimant 13-16][1].  Instead she and her counsel committed Civil Conspiracy making a 'global agreement' outside of the Settlement Agreement at [Bankr ECF No. 93-1 App.8-18; No.339 App.497-504; No.343 App.541-559; No.346 *noting record again  App.648-662]  The trustee, according to the *U.S. Department of Justice, Executive Office for United States Trustees Handbook for Chapter 7 Trustees – Effective October 1, 2012* ("Handbook") must assist the United States Trustee in the performance of its civil enforcement duties and refer to the United States Trustee matters that might indicate the commission of a crime. 28 U.S.C. § 586.  NOT BURY IT IN A SETTLEMENT AGREEMENT Bankr. ECF No.93-1 and then further join forces with the same perpetrators of the crimes.[2] C. COLLECTION AND LIQUIDATION OF ASSETS, 11 U.S.C. § 704(a)(1), AND ACCOUNTABILITY OF THE TRUSTEE FOR ALL PROPERTY RECEIVED, 11 U.S.C. § 704(a)(2)

---

[1] This is not the only negligent act of the Appellee-Trustee.  She negated $1.3m in sales proceeds with her bad judgment.
[2] Which include fraudulently filing known false claims 13-16 in the bankruptcy court.

The Hawaii Property valued at $4,000,000 and its contents scheduled at $250,000 have disappeared in this bankruptcy with no explanation or accounting provided to the Debtor despite numerous demands. The Trustee is accountable for <u>all property</u> received. 11 U.S.C. § 704(a)(2).

ISSUE THREE: <u>Trustee Intentionally Misleading the New Trier of Fact is Clearly Erroneous</u>

**a.    Standard of Review**

The bankruptcy court was Clearly Erroneous by denying evidence on October 16th and 17th 2023 and being swayed by the misrepresentations of the Trustee who provided false and misleading information regarding the history of the past 4-years in the 20-18118 bankruptcy. The Debtor has made a definite and firm conviction that a mistake has been committed.[3]

**b.    Argument and Citation of Authority**

The Appellant-Debtor believes the Appellee-Trustee, among many other things, is also in violation of Employment of Professionals.  a. 11 U.S. Code § 327 - Employment of Professional Persons [Bankr. ECF No.414 App.1078-1081; No.417 App.1087; No.419 App.1095-1097; No.424 App.1099-1104]

General Standards Under 11 U.S. Code section §327, a chapter 7 trustee may employ professionals, including attorneys, accountants, appraisers or auctioneers to "represent or assist the trustee" in performing trustee duties under title 11.

The Appellant-Debtor request the BAP to take judicial notice that the Appellee-Trustee did not seek permission to engage Mr. Miller in the <u>*unnecessary*</u> Forced Turnover litigation that halted this bankruptcy since March of 2022.  Mr. Miller's limited scope was to remove the liens and deeds from 1450 Oka Kope, ex-partner – Claimant 13-16. Instead the Appellee-Trustee removed the liens, engaged in Civil Conspiracy and lost $250,000 in personal property at the Hawaii Property that here 'duty' required she liquate in 2020.  The Appellee-Trustee further deemed an un-notarized documented 'valid'

---

[3] The Appellant-Debtor never prohibited the Trustee from the property and her realtor offered an opinion, but the trustee never followed through ordering required appraisal per [Bankr. ECF No. 125 App.20.]

negating $1.3m in sales proceeds due the Estate.  [Bankr. ECF No. 339 App. 497-504; No.343 App.541-559.]

The employment of professionals must be approved by the court. Court approval must be sought **_prior_** to the rendering of any services. 11 U.S.C. § 327(a). Issues such as disinterestedness and necessity of employment are more appropriately addressed when court approval is sought and obtained prior to work by the professional. Generally, courts do not authorize compensation for services rendered prior to court-ordered employment. However, some courts permit retroactive or nunc pro tunc orders of employment in special circumstances, but even where permitted, such orders should be rarely sought. Mr. Miller, of course, requested pro tunc after the huge mess he and the Trustee created together for self-serving reasons attempting to extort administrative fees.[4] [Bankr. ECF No.424 App.1099-1104]

How convenient now that there is a demand for Jury trial [24-cv-727] after the Appellant-Debtor exhausted all possibilities of escaping the *voluntary* bankruptcy since March of 2022 does Mr. Miller seek permission for the mess he and the Trustee created.  The Debtor is preparing the filing of her Objection to that Motion to Expand Scope if the BAP lacks the 'power' to stop it here or in BAP: 24-07 or 24-10.

Mr. David M. Miller was employed to remove the $1.6m in fake liens/deeds Claimant 13-16 fraudulently filed claims against the debtor – removed in June of 2022. The fact is the Trustee did not seek permission to employ Mr. Miller for the *unnecessary* 'Forced Turnover'.

Further, Mr. Miller responded for all of the Trustee's inquires and directed McGann to "email everything to him" [Bankr. ECF No.284 App.213-281(see pg. no.269)] The Appellee-Trustee negated her duties in bankruptcy case 20-18118 and is attempting to hide it in the expanding of scope motion. The trustee must actively supervise estate professionals to ensure prompt and appropriate execution of duties, compliance with required procedures and reasonable and necessary fees and expenses. 28 U.S.C.

---

[4] The Trustee was offered $75k in March of 2022.  She denied the settlement -her fee demand was $350k for sending a threat letter to Claimant 13-16 who they have now joined forces with after the removal of $1.6m in fake liens and deeds.

§ 586, 28 C.F.R. § 58.6(a) (7).  Instead Appellee-Trustee had Mr. Miller performing all communication and refused to engage with the Appellant-Debtor. In fact, Mr. Miller has been the sole communicator since March of 2022.

DEFINITION OF PROFESSIONALS in the Appellee-Trustee's 'Handbook' provides a list of "professional persons" provided by section 327(a) – attorneys, accountants, appraisers, liquidators, auctioneers – is not exhaustive. The trustee must seek court approval only if the person sought to be employed is a "professional person" within the scope of section 327(a).

EMPLOYMENT STANDARDS - The threshold question for the employment of any professional _is the necessity of employment_. The trustee must determine whether the services of a professional are needed and whether the cost is warranted. 11 U.S.C. §§ 330 and 704(a). Further, the trustee needs to determine at the outset the level of professional work required, and the estimated costs and benefits associated with the work.  As a general rule, professional persons employed by a trustee must be disinterested and must not have an interest adverse to the estate. 11 U.S.C. §§ 327(a) and 101(14).

EMPLOYMENT PROCEDURES - Section 327 does require court approval. The trustee must provide a copy of the employment application to the United States Trustee. Fed. R. Bankr. P. 2014(a). The form of applications for employment is governed by Fed. R. Bankr. P. 2014 and 6005. An employment application must state:

1) The specific facts necessitating employment;
2) The name of the person employed;
3) The reasons for selecting the firm or individual;
4) The professional services to be rendered;
5) The proposed arrangements for compensation; and
6) The professional's connections with the trustee, debtor, creditors, other parties' interest.

A district court's findings of fact are reviewed under the clearly erroneous standard.  See Fed. R. Civ. P. 52(a)(6); _United States v. Cazares, 121 F.3d 1241, 1245 (9th Cir. 1997)_ (standard applied in both civil and criminal proceedings).  "Findings of fact are made on the basis of evidentiary hearings and usually involve credibility determinations, which explains why they are reviewed deferentially under the

clearly erroneous standard." *Rand v. Rowland, 154 F.3d 952, 957 n.4 (9th Cir. 1998)* (en banc). Special deference is paid to a trial court's credibility findings. See *Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)*; *McClure v. Thompson, 323 F.3d 1233, 1241 (9th Cir. 2003)*.

Review under the clearly erroneous standard is significantly deferential, requiring a "definite and firm conviction that a mistake has been committed." See *Easley v. Cromartie, 532 U.S. 234, 242 (2001)*; *Fisher v. Tucson Unified Sch. Dist., 652 F.3d 1131, 1136 (9th Cir. 2011)*; *United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1175 (9th Cir. 2010)* (en banc) (per curiam); see also *Miller v. Thane Int'l, Inc., 519 F.3d 879, 888 (9th Cir. 2008)* (concluding the district court clearly erred). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Elliott, 322 F.3d 710, 715 (9th Cir. 2003)*; see also *United States v. Stanley, 653 F.3d 946, 952 (9th Cir. 2011)*; *United States v. Al Nasser, 555 F.3d 722, 727 (9th Cir. 2009)*.

The court of appeals reviews for clear error where:

1) District court adopts proposed findings submitted by parties. See *Anderson v. Bessemer City, 470 U.S. 564, 571 73 (1985)*; see also *Silver v. Executive Car Leasing Long-Term Disability Plan, 466 F.3d 727, 733 (9th Cir. 2006)*; *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd., 205 F.3d 1107, 1112 (9th Cir. 2000)* (noting while review is for clear error, the reviewing court will review with "particularly close scrutiny" when findings are adopted).

2) Findings of fact are based on stipulations. See *Smith v. Commissioner, 300 F.3d 1023, 1028 (9th Cir. 2002)*.

3) Findings of fact are based solely on written record. See *R.B., ex.rel. F.B. v. Napa Valley Unified School District, 496 F.3d 932, 937 (9th Cir. 2007)*; *Amanda J. ex rel. Annette J. v. Clark County Sch. Dist., 267 F.3d 877, 887 (9th Cir. 2001)*.

4) Findings of fact after a bench trial. See *Oswalt v. Resolute Indus., Inc., 642 F.3d 856, 859 (9th Cir. 2011)*; *Twentieth Century Fox Film Corp. v. Entertainment Distributing, 429 F.3d 869, 879 (9th Cir. 2005)*; *Friends of Yosemite Valley v. Norton, 348 F.3d 789, 793 (9th Cir. 2003)*, clarified by *366 F.3d 731 (9th Cir. 2004) (order)*; see also *Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 384 (9th Cir. 1994)* ("In reviewing a bench trial, this court shall not set aside the district court's findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous.").

5) "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found."

*Rabkin v. Oregon Health Sciences Univ., 350 F.3d 967, 977 (9th Cir. 2003)* (citation and internal quotation marks omitted); see also In re *Korean Air Lines Co., Ltd., 642 F.3d 685, 698 n.11 (9th Cir. 2011)*.

**c.      The Consequence of Failing to Follow the Rule;**

Under CRS 18-8-502 the Colorado law defining first-degree perjury as lying under oath in an official proceeding; shouldn't that apply to a Trustee falsely stating to a new judge there was no value established upon the 'Property' during the past four-years because the Debtor refused entry and ignored a cease and desist.  The proof of evidence offered by the Appellant-Debtor cannot be ignored.  What the Trustee and her Counsel have done is a class 4 felony, 1st-degree perjury carries 2 to 6 years in prison and/or $2,000 to $500,000 in fines.  They had no issues whatsoever threatening the Appellant-Debtor with incarceration [Bankr. ECF No.365 App.759-760; No. 396 App.889-896] therefore they should understand same principals will apply to them – unless they are somehow above the 'law'.

ISSUE FOUR: <u>Important Questions of Public Policy Concerns With A Trustee Acting In Bad Faith Wielding Unnecessary Power For Self-Serving Purposes</u>.

It is of great Public concern that the Appellee-Trustee is not following the Rules and Regulations required in bankruptcy by acting above the 'law'.  The guidelines and rules per the Appellee-Trustees 'Handbook' are clear in their expectations of her duties.

Under the Bankruptcy Code the term 'voluntary' needs to be further 'defined': When a debtor who does not qualify to be in a bankruptcy, shows cause of such fact and further by making offers of settlement outside the requirements of the bankruptcy is yet held hostage (for four-years) at the hands of a 'powerful' United States Court Appointed Trustee and her unauthorized counsel - demands an answer. Public Policy Safety violations are piling up as the Appellee-Trustee and her unauthorized counsel have been permitted to do this to a prose member of the Public in the name of the 'law'. These actions are outrageous in every term of the definition of the word.

**a.      Standard of Review**

The Rational Basis Standard of Review means the enacting legislation is judged based on whether it has a reasonable relationship to a legitimate state interest.  Public Safety and Awareness

should be recognized here. The Rational Basis test prohibits the government from imposing restrictions on liberty that are irrational or arbitrary[5], or drawing distinctions between persons in a manner that serves no constitutionally legitimate end.[6]

**b.      Argument and Citation of Authority**

Reasonableness - "The scope of judicial review under this standard is narrow and an agency's [trustee] interpretation of its own policies and prior orders is entitled to deference." *California v. FCC, 4 F.3d 1505, 1511 (9th Cir. 1993)*.  The court may, however, require the agency to provide a reasoned analysis.[7]  See *California v. FCC, 39 F.3d 919, 925 (9th Cir. 1994)*.  "Moreover, if the record reveals that the agency has failed to consider an important aspect of the problem or has offered an explanation for its decision that runs counter to the evidence before [it], we must find the agency in violation of the APA."  Id.

The Appellee-Trustee offers no explanation, plan or anything of substance and regurgitate the 'law' that the Property belongs to the Estate…the Estate the Appellee-Trustee has mismanaged and the Appellant-Debtor has moved Courts repeatedly to remove her to stop the litigation.

The reasonableness standard has been described as more rigorous than the arbitrary and capricious standard.  See, e.g., *Ka Makani, 295 F.3d at 959* (describing reasonableness standard as "less deferential").  "'The Supreme Court has noted, however, that 'the difference between the 'arbitrary and capricious' and 'reasonableness' standards is not of great pragmatic consequence.'" *California v. U.S. Dep't of Agric., 575 F.3d 999, 1011 (9th Cir. 2009)* (quoting *Marsh v. Or. Natural Res. Council, 490 U.S. 360, 377 n.23 (1989)*).  This court has observed that "[t]he rule of reason analysis and the review

---

[5] Such as the violation of Privacy the Trustee and her unauthorized counsel committed on February 28th, 2024 in the Forced Turnover – providing zero results from that visit, much like their visit in 2021.  Judicial Notice Please.

[6] Constitutionally how does it serve for a *forced prose* member of the public to lose their mental health, home and business unnecessarily BECAUSE they are in a 'voluntary' bankruptcy being held captive for administrate fees through Civil Conspiracy by a US court appointed trustee-because she can.

[7] The Court SHOULD have demanded a Plan from ITS Trustee.

for an abuse of discretion are essentially the same." See *Kern v. U.S. Bureau of Land Mgmt., 284 F.3d 1062, 1072 (9th Cir. 2002).*

Judicial misconduct as opposed to judicial error, can occur when the trial court demonstrates bias or unfairness toward one of the parties. (*Haluck v. Ricoh Electronics Inc (2007) 151 Cal.App.4th 994, 1008*). When a judge's conduct is inconsistent with recognized principles of judicial decorum "consistent with the presentation of a case in an atmosphere of fairness and impartiality," it may be deemed prejudicial, justifying a reversal. (Id. At 1002.) [Bankr. ECF No.291 App.306-307; No.321 App.387-388; No.323 App.390-396; No.346 App648-662].

**c.** **The Consequence of Failing to Follow the Rule;**

*In Haluck*, the court stated that "The trial of a case should not only be fair in fact,…. It should also appear to be fair". It concluded that "this conduct was a sideshow in the overall circus atmosphere mocking a serious proceeding important to the parties and it 'cast the judicial system itself in a bad light in the eyes of the litigants <u>and the public at large</u>." *(Id. At P.1004)*

Judicial misconduct may also be shown when the judge makes statements that show it does not believe a witness's testimony. (*People v. Sturm (2006) 37 Cal.4th 1218, 1233*.) CORRECTING THE RECORD [Bankr. No.346 App.648-662]

<u>STATEMENT OF THE CASE</u>

1.      The Debtor attempts to make a concise statement of the case and set out the facts relevant to the issues being submitted for review by describing the relevant procedural history which is unfortunately very convoluted and twisted by the intentional efforts of the Trustee and her unauthorized counsel, Mr. David M. Miller of Spencer Fane, LLP.

2.      The 'Ruling" presented for 'Review" is the Dismissal of the 20-18118 bankruptcy to allow the Debtor her fresh start immediately.  She is providing evidence herein that she does not qualify to be in this bankruptcy and has not since the year 2022. [Bankr. ECF No.324 App. 398-437; No.333 App.448-459; No.335 App.461-483; No.371 App.779-789]. The Debtor made offers outside what the bankruptcy

code required in attempts to be released. Appellant-Debtor McGann has been held and literally tortured by the Trustee and her counsel for self-serving purposes for over 4 years.

3.      Appellant-Debtor McGann was prejudiced, at the hands of the Trustee and her counsel. The Trustee neglected to collect claims ripe and viable claims for the Estate and still stalls a bankruptcy that could have been settled in March of 2022.

4.      After Conversion attempts halted by the Trustee, the Debtor, under no obligation to do so but desperate to simply settle claims and begin her fresh start; offered to pay Creditors directly to be Dismissed in October of 2023. The 'conversion attempts' were the Debtor's efforts to simply settle debts, save her home and business and escape the clutches of a fee-based malicious Appellee-Trustee hampered the efforts of the Debtor by filing [Bankr. ECF No.189 App.22-40; No.200 App.42-40; No.207 App.59-97; No.258 App.99; No.260 App.101-112; No.263 App.114-131; No.282 App.191-205; No.284 App. 213-281; No.286 App.291-295; No.324 App.398-437; No.333 App.448-459; No.346 App.648-662; No.353 App.677-705; No.371 App.779-798; No.379 App813-849; No.397 App.898-905] The Trustee relentlessly has stopped the Appellant-Debtor from paying Creditors and beginning her Fresh Start.

5.      The Claimant 11-1 also continues its interference and filed [Bankr. ECF No.283 App.207-211; No.285 App.283-289] JOINDER TO THE TRUSTEE OBJECTION TO MOTION TO CONVERT TO CHAPTER 11. As well as with [Bankr. ECF No.338 App.485-495] OBJECTION TO DEBTOR'S MOTION TO DISMISS.

The Trustee has stalled and refused to collect Order/Judgment of $144,883 due the Estate since 2020 from the 'Swany' award [Bankr. ECF No.281 App.133-189; No.290 App.297-304; No.291 App.306-307]. The Debtor humbly asks for Judicial Notice to be taken that Claimant 11-1 is directly related to this Order/Judgment awarded owed to the Debtor; in Colorado Court SWANY:17DR30490 & JAG: 2019-0066A for the involvement of stopping the project at 1450 Oka Kope in unison with Claimant's

11-1, currently in the Hawaii Intermediate Court of Appeals CAAP-22-000738 – panel of Judges assigned July 31, 2023.

Debtor responded with details in [Bankr. ECF No.341-App.506-524] exposing the connection between the parties through previous Court proceedings. Not one creditor filed an Objection except 11-1; and 13-16 who tailored their objection as a Response in an attempt to weasel out of future prosecution, introducing some 'global exclusion' around the 'settlement agreement'. while breaching the Operating Agreement and causing unmeasurable amounts of damages to McGann [Bankr. ECF No.93-1 App.8-18; No.343 App.541-559]

6.      Shockingly the further attempts to escape the *voluntary* bankruptcy with a Dismissal and offer to pay creditors immediately was refused and halted by the Trustee again; but this time through manipulating the facts and attempting to re-write history for the new Judge. The entire year of 2023 was spent fighting the wrongful Objections from the Trustee [Bankr. ECF No.189 App.22-40; No.200 App. 42-57; No.207 App.59-97; No.258 App.99; No.260 App.101-112; No.263 App.114-131; No.282 App.191-205; No.284 App.213-281; No.286 App.291-295; No.324 App.398-437; No.333 App.448-459; No.346 App.648-662; No.353 App.677-705; No.371 App.779-798; No.379 App.813-849; No.397 App.898-905]

7.      Even though the Debtor did not qualify to be held in the bankruptcy because the 'Property' (1535 Grand Ave. Grand Lake, CO 80447) was of Inconsequential Value the Debtor still tried to settle with the Trustee in March of 2022. The Trustee ignored all viable claims and collections naively believing there was 'equity' and the home was valued higher than what the Debtor was claiming.

8.      The value of the Grand Lake 'Property' was established at [Bankr. ECF No.41 App.5] and the Appellee-Trustee disputed the value throughout the Appellant-Debtor's attempts to Convert and the Rt. Honorable Judge Brown ORDERED the Appellee-Trustee that she had to answer the Debtor's request for information concerning the basis for the Trustee's valuation of the property. "The Trustee shall provide

the Debtor with any such information within seven days from the date of this Order DATED this 26th day of January 2022." [Bankr. ECF No.125 App.20].

9.     The Appellee-Trustee purported she was ordering an appraisal The TRUSTEE'S SUPPLEMENTAL BRIEF ON ELIGIBILITY ISSUES [DOC#260-app.101-112, pg.109 – No.30] clearly shows the Trustee was aware she needed to obtain an appraisal, as the Rt. Hon Judge Brown suggested, if she were to dispute the value ORDERED by [Bankr. ECF No. 41-App.5]. The Appellee-Trustee never ordered an appraisal.

10.    The Appellant-Debtor notified the Appellee-Trustee of the Property damages occurring at the Grand Lake Property and requested the Appellee-Trustee allow the Debtor to refinance and settle the bankruptcy to preserve the property in March of 2022.  The Trustee Refused and as consequence there are damages to the Property. (EXH B)

The Debtor warned the Trustee the siding was in desperate need of sealing years ago because it had not been done since 2018 and it was a routine maintenance requirement of the property due to the harsh elements of the location of the Property at 9,000 feet.  She was also notified of the boiler-heating water issues.  (EXH B – Grand Lake Plumbing Repair estimates).  The Debtor has been forced to suffer through extreme cold temperatures using costly space heaters trying to stay warm.

Today the Debtor is now forced to spend $83,000, more than double what it would have cost in 2022, because the cedar siding is no longer repairable and due to the damages must be removed and completely replaced. (EXH A - Contractor email and estimate).  The full extent of the damages is not yet known as discovery is just beginning.  In addition, due to the remote location and short seasons scheduling contractors has been an issue for the Debtor.   The Debtor has been waiting for months for Grand Lake Pluming to 'update' their bids from January of 2023.

Even after all the shenanigans with the 'forced turnover' for the past six-months, the Trustee stipulated to a value of $900,000 on April 18, 2024 during a non-evidentiary hearing with the Bankruptcy Court over their 'Renewed Motion for Forced Turnover' [Bankr. ECF No.401 App.924-925;

No.403 App.930-939; No. 403 App. 930-939; No.404 App.941-1071; No.405 App.1073; No.432 App.1105-1110; No.433 App.1112-1115; No.435 App.1117-1119; No.436 App.1121-1127].

The entire charade yielded a whopping $50,000 increase in value from what was established at Bankr. [ECF No. 41 App.5, reconfirmed at Bankr. ECF No.125 App.20] still making the property of Inconsequential Value (EXH C – Inconsequential Illustration Document (pg.10 of 66 in Bankr. ECF No.428 NOTICE OF AMENDMENT OF APPEAL filed 04.24.24.)).

11.     The facts disclosed in the MOTION TO DISMISS CHAPTER 7 CASE, [Bankr. ECF No.324 App.398-437] filed by the Debtor, _offered_ a speedy resolution with the Dismissal of the Chapter 7 bankruptcy for both the Creditors and the Debtor despite the fact the Debtor's Property was of Inconsequential Value.

12.     The 'Turnover' Order was a moot point when debts of the bankruptcy were offered to be settled; but because of the 'law' and the powers of the Appellee-Trustee she and her Counsel were allowed to cause massive duress and mental and physical harm to the Debtor as they violated her further by entering her home, farm and private dwelling on February 28, 2024. [Bankr. ECF No.365 App.720-725; No.368 App762-763; No.369 765-768; No.370 App.770-777; No.373 App.800-804; No.375 App.806-811]

The Trustee unbelievably took advantage of prose Appellant-Debtor McGann to the point of unconstitutional abuse and used the bankruptcy court as a weapon to do so.  The Trustee sent a 'staged email' in July of 2023.  There was no correspondence whatsoever from email [Bankr. ECF No.345 see App.pg.623] "*Loss Payable w 30d NOC, no need to move farm*" regarding cease a desist of operations or demand to 're-establish' a value as the Trustee falsely presented to the new Judge October 16th and 17th 2023.

Shockingly the Trustee said in open Court that there was "no value established" on the Debtor's Property and that was to the fault of the Debtor who was "ignoring a 19 month demand to cease and desist operations" and further "refused to allow them on the Property to inspect and determine a value".

See Bankr. ECF No.298 App. 309-316; No.311 App.318-383; No.320 App385; No.321 App387-388; No.323 App.390-396; No.333 App. 448-459; No.335 App.461-483; No.342 App.526-539; No.344 App.561-567; No.346*proof offer App.648-662; No.351 App.664-675; [No.411 App.1075-1076] Then onto the contempt charges wasting yet more time.  If the Debtor is so easily found held in Contempt the courts should have no trouble doing same to Trustee and her counsel upon reviewing the evidence. The Appellee-Trustee mislead the new Trier of Fact with these false statements.

13.     The Trustee took advantage of a known attack upon the Appellant-Debtor and used it to her advantage making threats forcing the Debtor to provide access to her personal farmhouse for self-serving purposes. [Bankr. ECF. No.365 App.759-760] This action provoked BAP 24-07 and 24-10.

14.     Asking the Court to again take Judicial notice of the results of the massive efforts to obtain the 'forced turnover'(Bankr. ECF No. 401 App.924-925-Inspection of Property Report).  The Trustee put more efforts forth on a moot turnover than in any of the viable avenues of collection available to the Estate [SEE: Bankr. ECF No.281, App.pg.156-166 and again at No.311 App.pg.364-369) with absolutely no result whatsoever…no report of damages, photos, estimates from contractors to repair [Bankr. ECF. No. 401 App.924-925].  The Trustee instead 'amends' her Motion for Turnover and again acts above the law demanding the Debtor be evicted to force sale 'as is' for $1.35m.  Then on April 18, 2024 the Trustee stipulated to a value of $900,000 rendering the property of Inconsequential Value as it was in 2022 and was at Doc#41 in 2021 at its $850,000 determined value.

15.     The Trustee had taken no action on marketing or a force turnover request from 2021 when she could have done so; but rather waits years later and fabricates a story to cover her actual 'lack of duty' attempting to blame it on the Debtor .

16.     In the Trustee's 'Amended Turnover Demand" Doc#401 she again misleads the bankruptcy court by introducing an insurance issue that was satisfied, documented and offered to the Court. (Proof of

Insurance 'issue 'at Bankr. ECF No.121[8]).  The retirement of Judge Brown opened the opportunity to the Trustee, and her counsel, Mr. Miller, who seized it to mislead the new Judge.

## SUMMARY OF THE ARGUMENT

17.     The Trustee has spent years, and wasted much time, money and caused intentional inflictions of emotional duress upon the Appellant-Debtor McGann; showing a well-established pattern of abusing the bankruptcy code for self-serving purposes involving administrative fees.

18.     This is a very long and twisted case that became sadly more complicated in the bankruptcy system when the Appellant-Debtor was prejudiced, at the unclean hands of the Trustee and her counsel, by a new judge after the recent retirement of the Honorable Judge Brown .

19.     The verifiable backstory and history of this bankruptcy is being intentionally convoluted by the Trustee and her counsel.  Debtor McGann was frauded on a project in Maui, HI CAAP-18-0000023 in Hawaii courts and SWANY:17DR30490 & JAG: 2019-0066A.  The fraud is buried in bankruptcy court Case 20-18118 and Adversary 21-01132 with the release of fraudulent claims filed upon Debtor McGann 13-1 through 16-1 – over $1.6m.

20.     The very perpetrator (Claimant 13-16) that fraudulently filed the false deeds and liens, to no consequences to them, immediately released them upon the meniscal efforts of a demand letter sent by the Trustee.  Now, [Bankr. ECF No.339 App.497-504] 1450 OKA KOPE, AND GAN-BEI-LA LLC RESPONSE TO DEBTORS MOTION TO VOLUNTARILY DISMISS CHAPTER 7, introduced new evidence of further negligence of the trustee as referencing 'heavily negotiated global release'. [Bank. ECF No.339 App.497-504 & No. 343- App.541-559].

21.     FINANCIAL POLICIES, PROCEDURES AND REPORTING in the U.S. Department of Justice, Executive Office for *United States Trustees Handbook for Chapter 7 Trustees* – Effective October 1, 2012 under *Section 704(a)(2)* requires the trustee to be accountable for all property received. This statutory duty of accountability and the trustee's responsibilities as fiduciary of the bankruptcy

---

[8] This includes the full insurance document to prove the Trustee did not need to purchase additional insurance.

estate require the trustee to establish and maintain adequate procedures for asset administration and case progress, investing and protecting estate assets and funds, and financial record keeping and reporting.

Section § 155 of title 18 makes it a crime for any party in interest or its attorney to knowingly and fraudulently enter into an agreement with another party in interest or its attorney, for the purpose of fixing the fee or compensation to be paid to them for services rendered in connection therewith, from assets of the estate. 18 U.S.C.§ 155.

22.    The Debtor has disputed the 'Redemption Agreement' and requested numerous times presentation of this "assignment" in which 1450 Oka Kope's attorney, Dan Wolfe, claimed Debtor McGann signed a DocuSign document [Bankr. ECF No.343 App.541-559 - see pgs.556].

23.    *The Sarbanes-Oxley Act of 2002*, created 18 U.S.C. § 1519. Section 1519 covers the alteration, destruction or falsification of records, documents or tangible objects, by any person, with intent to impede, obstruct or influence, the investigation or proper administration of any "matters" within the jurisdiction of any department or agency of the United States, or any bankruptcy proceeding, or in relation to or contemplation of any such matter or proceeding.

It provides:

"Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation [or lack thereof by the Executive Office and DOJ] or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both."

24.    The Trustee made a fatal error and conclusion stating "Celestial had no cognizable legal ownership interest in 1450 Oka Kope, LLC and thus, any right to sale proceeds from its sale of the Maui Property" [Bankr. ECF No.200 App.55]  Mr. Miller made same mistake [Bankr. ECF No.345 pg.615, 3rd Paragraph – "After reviewing all the relevant documents, we also have no doubt the redemption

agreement is valid.".  Mr. Miller went on more incredibly stating "among several other consequence, that you confess the 1450 liens on the Grand lake Property are valid".  Therefore, because of the Appellee-Trustee's error and omission in obtaining an original DocuSign document [that does not exist] the Appellee-Trustee further negated over $1,300,000 in sales proceeds due the Debtor's Estate.

25.    At the May 3, 2022 hearing the Rt. Hon. Judge Brown told the trustee she had a duty to 'step into the debtors' shoes and demand a collection of the sales proceeds ($1.3m) through debtor's single member entity.

26.    The Trustee then later attempted to make excuses in her OBJECTION TO DEBTOR'S MOTION TO CONVERT, [Bankr. ECF No. 200 App.42-57, pgs.51-53 letter D]. by acknowledging that "during that exchange, the Court stated that the Trustee misapprehended its June 28, 2021 ruling denying the Trustee's injunction request".  The Trustee continues to make enervated excuses for her negligence in collecting the proceeds claiming the Debtor's single member entity, Celestial Properties, was the problem and she couldn't "wear two hats" and claimed a 'conflict of interest' between the Estate and that of Celestials Properties LLC.

27.    There is no conflict of interest between McGann as the ONLY sole member of the entity Celestial Properties, LLC which wholly owned the property in Hawaii, and there was NO debt outside that of the property/project in Maui, Hawaii.  The Trustee admits she is "not confident in her ability to accurately complete the Debtor's statement and schedules" and further showed it.

28.    The very perpetrator (Claimant 13-16) that fraudulently filed the false deeds and liens, to no consequences to them, immediately released them upon the meniscal efforts of a demand letter sent by the Trustee.  Now, [Bankr. ECF No.339 App.497-504] 1450 OKA KOPE, AND GAN-BEI-LA LLC RESPONSE TO DEBTORS MOTION TO VOLUNTARILY DISMISS CHAPTER 7, introduced new evidence of further negligence of the trustee as referencing 'heavily negotiated global release'. [Bankr. ECF No.343 App.541-559].

29.     Most important for the Court to note is the continued regurgitation the Trustee makes throughout her plethora of filings, claiming the reason(s) for her actions are "more certain to lead to payment of creditors" [Bankr. ECF No.200 App.42-57].  The sad reality is creditors could have been paid in March of 2022 except the Appellee-Trustee maliciously took advantage of the Appellant-Debtors vulnerable mental state and tricked her, holding her in this bankruptcy longer than necessary.

30.     The ONLY Objections halting the payment for four (4) years now to Valid-Legitimate Creditors, in the two conversion attempts and the dismissal, are the Appellee-Trustee and her joined allies disputed Claimant 11 and ex-partners Claimant 13-16.  If that does not get the Court's notice the Appellee-Debtor is unsure what will.  The outright obvious Civil Conspiracy is undisputable nor has the Trustee denied or offered proof to contradict.

31.     The Trustee has stated every viable option available to collect for the Estate was simply too much effort and to burdensome and costly for the Estate – yet look at the bad-faith efforts on a Forced Turnover 4 years into a bankruptcy in which the Debtor offered to pay creditors.  The Trustee and her Counsel's actions are inexcusable and simply indecipherable.

32.     COMPLIANCE MEASURES - Trustees are fiduciaries who are held to very high standards of honesty and loyalty. Trustees who fail to maintain this high standard or who are otherwise deficient in their administration of cases will be subject to a wide range of remedial action by the United States Trustee. Imposition of remedial action is at the discretion of the United States Trustee.

33.     In this case 20-18118 remedial actions are warranted to remedy inadequate trustee performance, including substandard reporting or asset investigation efforts, inadequate internal controls, ineffective case administration, dilatory case administration, unprofessional behavior, and failure to liquidate assets for the benefit of unsecured creditors.

34.     The remedies available to the United States Trustee Executive Office include mandatory education, imposition of case closing schedules, motions to compel the filing of reports, objections to compensation, motions seeking disgorgement or surcharge, temporary suspension or termination of the

trustee from panel rotation, and an application to the court to permanently remove the trustee from all cases. Yet, despite years of notifying the U.S. Trustee Executive Office the Appellee-Trustee remains steadfast in using her Powers in bad-faith.

35.     In this 20-18118 case, the nature of the trustee's actions reflects dishonesty, deceit, fraud, and serious mishandling of the Estate. A single substantiated incident justifies immediate action by the United States Trustee to protect the [Appellant-Debtors] bankruptcy estates and the Appellant-Debtor respectfully demands this action commence. Remedies available to the United States Trustee include temporary restraining orders, orders freezing estate accounts, and referral to law enforcement agencies, the United States Attorney.

36.     PROCEDURES FOR SUSPENSION AND TERMINATION (28 C.F.R § 58.6) - In cases where estate assets are at risk or there appears to be gross misconduct, the United States Trustee may issue an "interim directive" for the immediate cessation of case assignments.

37.     EXTORTION FOR PAYMENT OF ADMINISTRATIVE FEES: In March of 2022, the Appellant-Debtor offered to pay $70,000 in administrative fees for the assistance of removing the $1.6m in fake liens/deeds from claimant 13-16. Noting for the record those efforts were simply a threatening letter and negotiations that ultimately have ended up damaging the Debtor and the Estate forcing Valid-legitimate Creditors to wait years unnecessarily.

38.     The Trustee and her Counsel refused and demanded $380,000 in administrative fees and started the crusades claiming the Grand Lake Property was worth upwards of $1.5m. [Bankr. ECF No.345 App.611]

39.     The U.S. Department of Justice, Executive Office for United States Trustees 'Handbook' for Chapter 7 Trustees – Effective October 1, 2012 Section 330(a) authorizes professionals employed by the trustee under section 327(a) to be compensated from the estate for actual services rendered that are necessary to the administration of a case or beneficial at the time at which the service was rendered toward completion of the case. Professionals may not be compensated for performing work that the

trustee can do without professional assistance. Particular care must be taken to avoid "double-dipping" when the trustee also serves as an attorney or accountant in a case. 11 U.S.C. § 327.

40.    Pursuant to section 330, after notice and a hearing, and subject to section 328, the court may award a professional person employed pursuant to section 327 reasonable compensation for actual, necessary services. Pursuant to 28 U.S.C. § 586(a)(3), as amended, applications for compensation and reimbursement of expenses filed by professionals must be prepared in accordance with the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330.

41.    COMPENSATION AND EXPENSES OF TRUSTEES - Trustee compensation is governed by section 330 and treated as a commission, subject to the limitations set forth in section 326. The compensation allowable in section 326 consists of varying percentages of all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

42.    The actions and unbridled power that have been bestowed upon the Appellee-Trustee are against Public Policy. No person in the United States should have to defend themselves from a U.S. Court appointed trustee who has gone rogue and uses the bankruptcy system as a personal vendetta weapon to extort fees while negating her duty of collecting and liquating viable assets and claims to the benefit of the estate and the creditors for the past four (4) years.

43.    The Trustee's actions must be exposed and stopped in the name of Public Policy and safety. No one should have such power they can behave with the intention of destroying someone unnecessarily rending them homeless and shut their business down.

## ARGUMENT

44.    Each Argument is outlined above identified as 'b.' in Statement of Issues and Standards of Review Section.

45.     Arguments in relationship to the administration of the Bankruptcy Case and the lack of duty

carried out by the Trustee are as follows.  Referring to the U.S. Department of Justice, Executive Office

for United States Trustees Handbook for Chapter 7 Trustees – Effective October 1, 2012

46.     CASE PROGRESS is obviously a problem for the Trustee in relation to this case 20-18118.

Section 704(a)(1) provides that a trustee shall close an estate as expeditiously as is compatible with the

best interests of the estate. Delays in case closure diminish the return to creditors, undermine the

creditors' and public's confidence in the bankruptcy system, increase the trustee's exposure to liability,

raise the costs of administration, and, in cases involving non-dischargeable pre-petition tax liabilities,

expose the debtor to increased penalties and interest.

47.     Delays also give rise to public criticism of the bankruptcy process. To ensure compliance with

section 704(a)(1), the United States Trustee monitors the number and age of open cases and the reasons

they remain open. To help ensure that case administration and closure are not unduly delayed, the trustee

must implement a system to review the progress of each case and must be able to demonstrate that this

review is performed on a regular basis. 28 U.S.C. § 586.

48.     OPPOSE THE DISCHARGE OF THE DEBTOR, 11 U.S.C. § 704(a)(6).  The trustee has a duty

under section 704(a)(6) to object to the debtor's discharge if advisable. 11 U.S.C. § 727(a). To

determine if it is advisable to oppose the debtor's discharge, the trustee must consider the cost of the

litigation, the amount of estate funds available, the benefit to creditors of a denial of the discharge, and

the likelihood of success. 11 U.S.C. § 704(a)(1), 28 U.S.C. § 586.

49.     The Appellee-Trustee must be familiar with the grounds for objecting to discharge, and

whenever appropriate, must examine the acts and conduct of the debtor to determine whether grounds

exist for denial of discharge. 11 U.S.C §704(a)(6).

50.     The United States Trustee is also authorized to object to the discharge of a debtor or seek

revocation of the discharge. If the trustee has information that would support an objection to

discharge but deems such an action infeasible, the trustee must promptly bring that information

to the attention of the United States Trustee. A trustee that has filed a complaint objecting to

the debtor's discharge must not move for dismissal of the complaint without notice to the

United States Trustee. 28 U.S.C. § 586, Fed. R. Bankr. P. 7041.

HANDBOOK FOR CHAPTER 7 TRUSTEE -
H. FURNISH INFORMATION CONCERNING THE ESTATE, 11 U.S.C. § 704(a)(7).

51.     A trustee shall have a system in place to timely respond to reasonable inquiries on behalf of

debtors, creditors, attorneys, the court, and other interested parties.  As just one example, see [Bankr.

ECF No.281 App. Pgs.156-166] Bucket of Collections.  Then [Bankr. ECF No. 311 App.Pgs. 371-373]

after ten (10) months of being ignored the Appellant-Debtor's attorney sent another demanding letter.

N. OTHER DUTIES OF A CHAPTER 7 TRUSTEE DISMISSALS OR CONVERSIONS OF A

CHAPTER 7 CASE

52.     Chapter 7 cases may be dismissed pursuant to section 707. The trustee should review

motions to dismiss and object to dismissals which would not be in the best interest of

creditors. Unless the court orders otherwise, the trustee in a dismissed case must pay

any funds on hand and return any property to the person or entity from whom the funds

and property were obtained. See 11 U.S.C. § 349(b). Generally, this will mean that the

trustee will return the funds and property to the debtor or third party from whom the trustee received the

funds, unless the court directs that the funds and property be

distributed to creditors.

53.     The court may not convert a chapter 7 case to a chapter 12 or chapter 13 case unless the debtor

requests or consents to conversion. 11 U.S.C. § 706(c). The trustee may be able to challenge conversion

to chapter 13 if the debtor has engaged in fraudulent conduct or bad faith, in which the Appellant-Debtor

has NOT. The Trustee had a duty to release the Appellant-Debtor in March of 2022 when she failed to provide her own appraisal and the Property was of Inconsequential value at the $850,000 appraisal per Bankr. ECF No. 41 also See Order No. 125 the Trustee did not provide the evidence of.

REFERRAL OF POTENTIAL BANKRUPTCY CRIMES PER THE BANKRUPTCY CHAPTER 7 HANDBOOK a. DETECTING CRIMINAL ACTIVITY

54.     The trustee is often in the best position to initially identify fraud or criminal activity in chapter 7 cases. When criminal activity is suspected, the trustee must notify the United States Trustee immediately. 18 U.S.C. § 3057.  The initial review of bankruptcy schedules should have alerted the Appellee-Trustee to potential crimes.  Schedules and statements indicated sham and fraudulent transactions, such as creation of false secured creditors, grossly undervaluation [over valuing in Appellant-Debtors case] of assets, sudden depletion of inventory [missing $250,000 personal property in Hawaii], fraudulent transfers to 1450 Oka Kope, and real estate fraud.]

55.     TYPES OF CRIMINAL CONDUCT.  The most common bankruptcy crimes are set forth in section 152 of title 18. That section makes it a crime for any individual to "knowingly and fraudulently:"

    1) Conceal property of the estate;
    2) Make a false oath or account in relation to a bankruptcy case;
    3) Make a false declaration, certification, verification or statement in relation to a bankruptcy case;
    4) Make a false proof of claim;
    5) Receive a material amount of property from the debtor with intent to defeat the Bankruptcy Code;
    6) Give, offer, receive or attempt to obtain money, property, reward or advantage for acting or forbearing to act in a bankruptcy case;
    7) Transfer or conceal property with the intent to defeat the Bankruptcy Code;
    8) Conceal, destroy, mutilate or falsify documents relating to the debtor's property or affairs; or
    9) Withhold documents related to the debtor's property or financial affairs from a trustee or other officer of the court.

56.     Persons other than the debtor may commit bankruptcy crimes. During the course of the administration of the estate, the trustee also may become aware of potential theft or embezzlement by professionals (e.g., appraisers, auctioneers, attorneys) or by the trustee's employees or the Trustee herself in this case 20-18118.

57.     Sections 153 and 154 of title 18 are specifically directed to trustees and other officers of the court. Section 153 relates to the knowing and fraudulent misappropriation, embezzlement or transfer of property, or destruction of any estate document, by the trustee or other officer of the court, including an agent, employee or other person engaged by the trustee or officer of the court. 18 U.S.C. §§ 153, 154.

58.     18 U.S.C. § 154(3) specifically identifies the United States Trustee as the only party in interest who does not require a court order directing the trustee or court officer to permit a reasonable opportunity for inspection.  So, the question must be asked and answered by the Trustee; why the Turnover efforts that yield zero results of 'value'?  Why and How?  Why, only the Trustee can truly answer; yet, no one has made her accountable to do so yet.  And How appears to be in the 'laws' that exist with unbridled powers bestowed upon a Trustee.  This gives cause for review and adjustment of those laws to prevent this abuse which is without doubt against Public Policy.

## CONCLUSION

59.     The Trustee has caused a tremendous amount of confusion, pain and suffering and should be held accountable with her hired counsel for the damages.  The only delays caused in this four-year-old bankruptcy are that of the Trustee and Mr. David M. Miller.  The evidence and the court docket hold the truth the BAP respectfully must take notice of. The Trustee has acted recklessly throughout the entire bankruptcy and further took on some sort-of personal vendetta against the Appellant-Debtor for holding her accountable for her actions.  The Trustee and her counsel have attacked the Debtor with a Forced Turnover claiming it was necessary to properly administer the bankruptcy and obtain a value of the Property. Further the Trustee and her counsel have flat out lied to the new Judge stating the Debtor is uncooperative and purposely delayed the bankruptcy.

60.     The actions of the Trustee are criminal, and she has unlawfully manipulated rules to hold the Debtor against her will and changed the bankruptcy from voluntary to involuntary.

61.     The Debtor respectfully demands immediate dismissal from the 20-18118 bankruptcy.

62.     For the Trustee to be sanctioned for their wrongdoings

63.     And any other remedies available to restore the rights and liberties that were stripped from the

Debtor within this bankruptcy at the unclean hands of the Trustee, Jeanne Jagow and Mr. David M.

Miller her unauthorized counsel.


DATED : this 6th day of May 2024


*Sherry McGann*
/s/ Sherry McGann
PO BOX 2355, Grand Lake, CO 80447 -
sherry@nalanimaui.com




CERTIFICATE OF SERVICE


The undersigned certifies that on May 6, 2024  Sherry McGann, I served by electronic email a copy of
**Appellant's Brief and Appendix** through the ECF/Pacer bankruptcy tool provided on all parties listed
on the bankruptcy and against whom relief is sought and those otherwise entitled to service pursuant to
the FED. R. BANKR. P. and these L.B.R.


DATED:    May 6, 2024

*Sherry McGann*

/s/ Sherry McGann

# TABLE OF AUTHORITIES

## Cases

*Akram, 259 B.R. 371, 374 (Bankr. C.D. Cal. 2001)* ................................................................2

*Amanda J. ex rel. Annette J. v. Clark County Sch. Dist., 267 F.3d 877, 887 (9th Cir. 2001)* ................. 11

*Anderson v. Bessemer City, 470 U.S. 564, 571 73 (1985)* ............................................................ 11

*Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)* ............................................................ 11

*Boothe v. Roofing Supply, Inc. of Monroe* ...............................................................................3

*California v. FCC, 4 F.3d 1505, 1511 (9th Cir. 1993* ................................................................. 13

*California v. U.S. Dep't of Agric., 575 F.3d 999, 1011 (9th Cir. 2009)* ........................................... 13

*Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)* ......................................4

*Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd., 205 F.3d 1107, 1112 (9th Cir. 2000)* ............ 11

*County of Los Angeles v. Leavitt, 521 F.3d 1073, 1078 (9th Cir. 2008)* .............................................3

*Daly v. Septula (In re Carrozzella & Richardson), 255 B.R. 267, 273 (Bankr. D. Conn. 2000)* ...................2

*Darensburg v. Metro. Transp. Comm'n, 636 F.3d 511, 518-19 (9th Cir. 2011)* .......................................7

*Easley v. Cromartie, 532 U.S. 234, 242 (2001)* ....................................................................... 11

*Envtl. Def. Ctr., Inc. v. EPA, 344 F.3d 832, 858 n.36 (9th Cir. 2003)* ..............................................3

*Exxon Co. v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir. 1995)* ..........................................................7

*Fagerquist v. Western Sun aviation, incl. (198) 191 Cal.app.3d 709, 719* ...........................................6

*Fisher v. Tucson Unified Sch. Dist., 652 F.3d 1131, 1136 (9th Cir. 2011)* ......................................... 11

*Friends of Yosemite Valley v. Norton, 348 F.3d 789, 793 (9th Cir. 2003)* .......................................... 11

*Haile v. Holder, 658 F.3d 1122, 1125 (9th Cir. 2011)* ................................................................6

*Haluck v. Ricoh Electronics Inc (2007) 151 Cal.App.4th 994, 1008* .................................................. 14

*Harper v. City of Los Angeles, 533 F.3d 1010, 1027 n.13 (9th Cir. 2008)* ...........................................7

*Harris v. Wittman (In re Harris), 590 F.3d 730, 737 (9th Cir. 2009)* .................................................2

*In Haluck* ............................................................................................................... 14

*Ka Makani, 295 F.3d at 959* ........................................................................................... 13

*Kern v. U.S. Bureau of Land Mgmt., 284 F.3d 1062, 1072 (9th Cir. 2002)* ........................................... 14

*Khan v. Holder, 584 F.3d 773, 780 (9th Cir. 2009)* ...................................................................6

*Korean Air Lines Co., Ltd., 642 F.3d 685, 698 n.11 (9th Cir. 2011)* ................................................ 12

*Marsh v. Or. Natural Res. Council, 490 U.S. 360, 377 n.23 (1989)* .................................................. 13

*Mathews v. Chevron Corp., 362 F.3d 1172, 1180 (9th Cir. 2004)* .....................................................6

*McClure v. Thompson, 323 F.3d 1233, 1241 (9th Cir. 2003)* ........................................................ 11

*Miller v. Thane Int'l, Inc., 519 F.3d 879, 888 (9th Cir. 2008)* ..................................................... 11

*Monex Int'l, Ltd. v. Commodity Futures Trading Comm'n, 83 F.3d 1130, 1133 (9th Cir. 1996)* ......................6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co. (1983)* .................................................4

*Natural Resources Defense Council, Inc. v. United States EPA* .......................................................4

*Oswalt v. Resolute Indus., Inc., 642 F.3d 856, 859 (9th Cir. 2011)* ................................................ 11

*People v. Sturm (2006) 37 Cal.4th 1218, 1233* ....................................................................... 14

*Price Rd. Neighborhood Ass'n v. U.S. Dep't of Transp., 113 F.3d 1505, 1511 (9th Cir. 1997)* ......................3

*R.B., ex.rel. F.B. v. Napa Valley Unified School District, 496 F.3d 932, 937 (9th Cir. 2007)* ..................... 11

*Rabkin v. Oregon Health Sciences Univ., 350 F.3d 967, 977 (9th Cir. 2003)* ........................................ 12

*Rand v. Rowland, 154 F.3d 952, 957 n.4 (9th Cir. 1998)* ............................................................ 11

*Riordan v. State Farm Mut. Auto. Ins., 589 F.3d 999, 1004 (9th Cir. 2009)* .........................................6

*Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996)* ............................................................7

*Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 384 (9th Cir. 1994)* .................................... 11

*Silver v. Executive Car Leasing Long-Term Disability Plan, 466 F.3d 727, 733 (9th Cir. 2006)* .................... 11

*Smith v. Commissioner, 300 F.3d 1023, 1028 (9th Cir. 2002)* ............................................................6, 11

*Suzy's Zoo v. Commissioner, 273 F.3d 875, 878 (9th Cir. 2001)* ....................................................................6

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 783 (9th Cir. 2000)* ......7

*Time Warner Entertainment Co. v. Six Flags Over Georgia, 245 Ga. App. 334, 350 (2000* ...................................3

*Twentieth Century Fox Film Corp. v. Entertainment Distributing, 429 F.3d 869, 879 (9th Cir. 2005)* ................. 11

*United States v. Al Nasser, 555 F.3d 722, 727 (9th Cir. 2009)* .................................................................... 11

*United States v. Alvarez-Moreno, 657 F.3d 896, 900 n.2 (9th Cir. 2011)* .........................................................6

*United States v. Cazares, 121 F.3d 1241, 1245 (9th Cir. 1997)* ................................................................... 10

*United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1175 (9th Cir. 2010)* .................................. 11

*United States v. Elliott, 322 F.3d 710, 715 (9th Cir. 2003)* ....................................................................... 11

*United States v. Jimenez-Medina, 173 F.3d 752, 754 (9th Cir. 1999)* ..............................................................6

*United States v. Stanley, 653 F.3d 946, 952 (9th Cir. 2011)* ...................................................................... 11

*United States v. Urena, 659 F.3d 903, 908 (9th Cir. 2011)* ...........................................................................6

*Wilkes, 662 F.3d at 532.* ...............................................................................................................6

*Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002)* .......................................................7

## Statutes

§ 707(a) ...................................................................................................................................2

11 U.S.C. § 707(a) ........................................................................................................................2

28 U.S.C. § 158 (b) .......................................................................................................................2

28 U.S.C. 1334(b) .........................................................................................................................2

5 U.S.C. § 706(2)(A) ......................................................................................................................4

*Pullman Standard v. Swint, 456 U.S. 273, 289 n.19 (1982)* ..........................................................................6

## Other Authorities

Section § 155 of title 18 ............................................................................................................... 21

Section 3057 of title 18 of the United States Code .....................................................................................5

section 327(a) .......................................................................................................................... 10

*The Sarbanes-Oxley Act of 2002* ...................................................................................................... 21

## Rules

11 U.S. Code § 327 .......................................................................................................................8

11 U.S. Code section §327 ................................................................................................................8

11 U.S.C §704(a)(6) ..................................................................................................................... 26

11 U.S.C. § 327 ......................................................................................................................... 24

11 U.S.C. § 327(a) .......................................................................................................................9

11 U.S.C. § 349(b) ...................................................................................................................... 27

11 U.S.C. § 704(a)(1) ................................................................................................................... 26

11 U.S.C. § 704(a)(2) .....................................................................................................................8

11 U.S.C. § 704(a)(6) ................................................................................................................... 26

11 U.S.C. § 704(a)(7) ................................................................................................................... 27

11 U.S.C. § 706(c) ...................................................................................................................... 27

11 U.S.C. §§ 330 and 704(a) ............................................................................................................ 10

18 U.S.C. § 1519 ........................................................................................................................ 21

18 U.S.C. § 154(3 ....................................................................................................................... 29

18 U.S.C. § 3057 ........................................................................................................................ 28

18 U.S.C. §§ 153, 154 ................................................................................................................... 28

18 U.S.C.§ 155 ........................................................................................................................... 21

28 C.F.R. § 58.6(a) (7) ............................................................................................................... 10

28 U.S.C. § 586 .............................................................................................................5, 10, 26

28 U.S.C. § 586(a)(3 .................................................................................................................. 25

CRS 18-8-502 ........................................................................................................................... 12

Fed. R. Bankr. P. 2014 and 6005 ............................................................................................. 10

Fed. R. Bankr. P. 2014(a) ......................................................................................................... 10

Fed. R. Bankr. P. 7041 ............................................................................................................. 26

Fed. R. Civ. P. 52(a)(6) ............................................................................................................ 10

title 11 .......................................................................................................................................2